PEOPLE OF THE STATE OF NEW YORK ex rel. PHILIP WEINSTEIN & SON, INC., Petitioner, for a Writ of Mandamus, *v.* JACOB A. CANTOR, C. ROCKLAND TYNG, RICHARD H. WILLIAMS, ARTHUR F. MURPHY, GEORGE HENRY PAYNE, JOSEPH F. O'GRADY, JAMES J. SEXTON and LEWIS M. SWASEY, Constituting the Board of Taxes and Assessments in the City of New York, Respondents.

(Supreme Court, Bronx Special Term, July, 1921.)

Taxes — statutes granting exemptions strictly construed — section 4-b, Tax Law, an enabling act — taxable status date in the city of New York fixed by section 892 of the Greater New York Charter — writ of mandamus denied.

Under the rule that statutes granting exemptions from taxation are to be strictly construed, an exemption may be granted only so far as it is expressly authorized.

Section 4-b of the Tax Law (added by chap. 949 of the Laws of 1920) relating to exemption of new buildings from local taxation, is merely an enabling act authorizing a municipality to adopt a scheme of exemption for buildings completed after April 1, 1920, and those begun before April 1, 1922.

Upon an application for a writ of mandamus directing the board of taxes and assessments to strike from the tax roll of the city of New York the taxes imposed and charged against two buildings owned by relator containing over one hundred dwelling apartments which were completed July 1, 1920, it was conceded that said buildings are entitled to some exemption under the provisions of a city ordinance which employs the date April 1, 1920, in the same connection in which it is used in section 4-b of the Tax Law. Said ordinance became effective February 25, 1921, and was authorized by said section 4-b of the Tax Law, which became a law September 27, 1920, together with other so-called "housing laws." Relator's application for an exemption for the year 1921 made on April 23d of that year, at which time, although no part of the tax had become a lien upon the property, the assessment roll for the 1921 tax had been delivered to the board of aldermen, was denied under section 892 of the Greater New York Charter on the ground that no exemption could be granted under the ordinance "until the next taxable status date which will be October 1st, 1921, for the year 1922." *Held*, that the application for the mandamus will be denied for the reason that said ordinance was not intended to apply to the taxes for the year 1921.

Application for a writ of mandamus.

Bernard S. Deutsch, for petitioner.

John P. O'Brien (William H. King, of counsel), opposed.

Gavegan, J. This is an application for a writ of mandamus directing the board of taxes and assessments to strike from the tax roll of the city of New York " the taxes imposed and charged against " two buildings known as Nos. 1565 and 1575 Grand Boulevard and Concourse for the year 1921. They were

completed July 1, 1920, are five stories in height, contain over 100 apartment-dwellings and are, concededly, buildings entitled to some exemption from taxation for local purposes under the provisions of the ordinance of said city which became effective on February 25, 1921. This local legislation was authorized by section 4-b of the State Tax Law, which section became a law September 27, 1920, together with other so-called "housing laws." The buildings were duly assessed for local taxation for the year 1921 and the tax on them for that year amounts to about $1,400.

Section 4-b of the Tax Law was added by chapter 949 of the Laws of 1920 and reads as follows: "Exemption of new buildings from local taxation. The legislative body of a county, or the legislative body of a city with the approval of the board of estimate and apportionment, if there be one in such city, or the governing board of a town, village or school district may determine that until January 1st, nineteen hundred thirty-two, new buildings therein, planned for dwelling purposes exclusively, except hotels, shall be exempt from taxation for local purposes other than for assessments for local improvements during construction and so long as used or intended to be used exclusively for dwelling purposes, or if a building of four stories or more in height, used exclusively for dwelling purposes above the ground floor, provided construction was completed since April 1st, 1920, or, if not so completed, that construction be commenced before April 1st, nineteen hundred and twenty-two, and completion for occupancy be effected within two years after such commencement, or if now in course of construction within two years after this section takes effect."

Section 1 of the ordinance referred to provides as follows:

Supreme Court, July, 1921.          [Vol. 116.

"An Ordinance in Relation to the exemption from Local Taxation of New Buildings Planned for Dwelling Purposes in the City of New York.

" Section 1. Pursuant to and in accordance with the provisions of section 4-b of the Tax Law of the State of New York as such section was added by chapter 949 of the Laws of 1920, entitled, 'An Act to amend the tax law in relation to the exemption from local taxation of new buildings planned for dwelling purposes,' it is hereby determined that until January 1st, 1932, new buildings in the City of New York planned for dwelling purposes exclusively, except hotels, shall be exempt from taxation, as herein provided, for local purposes other than assessments for local improvements during construction and so long as used or intended to be used exclusively for dwelling purposes, or if a building of four stories or more in height used exclusively for dwelling purposes above the ground floor, provided construction was completed since April 1st, 1920, or if not so completed that construction be commenced before April 1st, 1922, and completion for occupancy be effected within two years after such commencement, or if on September 27th, 1920, in course of construction within two years after such act took effect."

·It will be noted that without action by the city there would be no exemption, as section 4-b of the Tax Law above referred to is merely an enabling act, authorizing the municipality to adopt a scheme of exemptions within the limitations of said section.

The ordinance took effect February 25, 1921. Thereafter and on April twenty-third relator applied to the board of taxes and assessments to have the buildings exempted from taxation for the year 1921. The application was not granted, the tax board contending that no exemption could be granted under the ordinance

" until the next taxable status date which will be October 1st, 1921, for the year 1922." It is pointed out on behalf of the municipality that section 892 of the Greater New York charter provides that " the taxable status of all persons and property assessable for taxation in the City of New York shall be fixed for each year " on the first day of October in the preceding year; that the books showing the time within which the board could revise the assessments were open between October 1, 1920, and November 16, 1920, and that the time within which the board could revise the assessment expired January 31, 1921.

When the application for exemption was made on April 23, 1921, no part of the tax had become a lien; but the assessment roll for the 1921 tax had been delivered to the board of aldermen.

Whatever may be the court's view of the purpose of the statute and ordinance, and of the good to be accomplished by them, the exemption can be granted only so far as it is expressly authorized. Moreover, it is a familiar principle that enactments which grant exemptions from taxation are to be strictly construed.

It is clear that in the statute itself the dates April 1, 1920, and April 1, 1922, are intended to limit the buildings which may be exempted to those completed after the former date and those begun before the latter date. There is much confusion in relator's argument due to an effort to lift the date "April 1st, 1920," out of its place in the act, so as to make it the date when the exemption shall take effect. Such is not the provision, that date being used to designate the first day of the period as to which exemptions may be allowed. In this connection the intention of the ordinance is shown by the fact that there could be no exemption without action by the city adopting the plan. Furthermore, there is no requirement that the municipality

Supreme Court, July, 1921.            [Vol. 116.

grant the exemption, if granted at all, from April 1, 1920.   The city was not compelled to adopt the plan. It might have refrained from doing anything towards its adoption or it might have waited until near the end of the period referred to in the statute.   Had it been adopted then and not until then the assertion could hardly be made that it must apply back to 1921.

The ordinance employs that date in the same connection in which it is used in the statute, it being included in what is practically a quotation from the statute.

However, it is set forth in the ordinance that it shall take effect on February 25, 1921, and that until January 1, 1932, buildings to which it relates shall be exempt as therein provided.

Under the Greater New York charter the rates of taxation for the year 1921 would be fixed on the basis of the assessments made and each parcel taxed accordingly.   The board of aldermen which adopted the ordinance was required to take the leading part in that procedure.   Did it intend to make the exemption effective as to taxes for the year 1921, and at the same time fail to provide any method by which the corresponding assessments would be eliminated from the tax roll, and even fail to make any reference to the plain necessity therefor?

Considering the whole plan and machinery for imposing taxation on real estate for local purposes and the familiarity of the board of aldermen and the board of estimate and apportionment with the functions to be exercised to that end by the various municipal boards and officers, it is difficult to believe that it was intended by this ordinance to grant any exemption from taxes on assessments already fixed for the year 1921.   The members of those boards must have regarded the imposition of such taxes so far com-

pleted as to be beyond the application of their legislation or there would have been some expression to the contrary.

The intention of the legislature is also to be considered. The report of the joint legislative committee on housing, transmitted to the legislature on September 20, 1920, makes several recommendations and refers to a " proposed bill " embracing the subject matter of section 4-b by authority of which the ordinance was adopted. That report, referring to the bill proposed, reads, in part, as follows: "An exemption for practically *ten years* at an average tax rate of 2.5 per cent per annum would mean a present value saving of approximately 20 per cent of the cost of the building." Evidently, a period of ten years was in mind. There may be doubt as to whether the ordinance was intended to authorize an exemption from the taxes for the year 1932. There seems to be no doubt that it was intended to relieve from the taxes of 1931, which would make a ten-year period commencing with 1922. The reference in the report to " an exemption for practically ten years," when considered in connection with those features of the existing systems of taxation for local purposes referred to above, indicates why the period of exemption was to extend to January 31, 1932. The next taxable status date for this city was only ten days off. The act could not be adopted, signed by the governor, considered by the city authorities and its provisions carried into an ordinance, all within ten days. It is likely, therefore, that the date January 1, 1932, was adopted with the idea of authorizing exemption from ten annual tax levies subsequent to the levy for 1921.

The members of the legislature must have realized that local discussion of the proposal to exempt would

follow the enactment and that therefore it would be necessary to extend the ten-year period through 1931. That was necessary because the legislation was not authorizing the remission of taxes for 1921. The attempt to include those taxes in a ten-year period would have been perilous, as tending to disturb existing and settled procedure for local taxation and to raise a question as to the power to remit taxes which, by the time local legislation had been considered and adopted, would have become a liability on properties already assessed.

Relator's argument based on the fact that the taxes had not become a lien on its property when the ordinance was adopted or when the demand for cancellation was made is not sound. The tax is divided by law into a " first half " and a " second half " and the former becomes a lien six months before the latter. The date fixed for the first half becoming a lien cannot be used as a basis of argument without considering the date fixed for the second half becoming a lien.

And long before the tax becomes a lien it is a fixed obligation. An analogy can be drawn between this situation and that which exists after a jury has rendered a money verdict and before the liability to pay is made a lien on real estate by the entry of judgment. In either case the obligation is, in ordinary course, unavoidable and its amount is fixed, before the lien arises. The lien is created as a part of the process of collection, as distinguished from the procedure for fixing the amount of the tax liability for the year, a process which starts at the beginning of October of the previous year. No authority to remit current taxes can be found in the statute and none is necessary to a full ten-year period of tax exemption.

But apart from any reasoning there is clear authority in support of the conclusion above indicated.

On behalf of the city there are cited numerous reported cases which have a bearing on the question involved. I will refer only to the case of *Association for the Benefit of Colored Orphans in the City of New York* v. *The Mayor, etc.,* 104 N. Y. 581. It appears an exemption was claimed by a charitable corporation which had taken title to the property affected on July 31, 1877. The assessment books were open from the second Monday in January, 1877, to May 1, 1877, during which time applications for exemption and corrections could have been made and considered. The tax became a lien in October, 1877. The court, at page 590, said: "Even if real estate not on the annual record of assessed valuation at the time when the books are open for examination could be placed on, or if real estate that is on could be taken from the record up to the time of the closing thereof in the following May, it is clear that no such alteration could be made after that date, and it is equally clear that the general scheme of taxation is to enter as assessable that property which is of that character up to the time when the record book is open for examination. If then assessable, its character would seem to be fixed for the year, but in any event, if assessable and assessed at the time the books close it must remain so for the purposes of taxation under the assessment-roll that is to be compiled from the record for that year. There is no power anywhere after that to take real estate out of that record and out of the roll, because since the closing of the record the property has passed into the hands of an institution exempt from taxation. The exemption must be held in such a case as this to be prospective in its operation. There is no provision made for any amendment or alteration of the record after the first day of May in regard to the assessment of property  *  *  *

12

and all subsequent proceedings are based upon the absolute stability of the record from that date, and the assessment-rolls are to be correct and certified transcripts of the same. * * * Whether or not the tax had become a lien at the time when the plaintiff took title is a fact of no moment. It may be conceded that technically there was then no lien. For the reasons already given the property was nevertheless rightly on the roll and could not be legally taken off, and the tax was properly laid and was payable by the plaintiff if it desired to clear its title to the property.''

The city's representatives knew, when this ordinance was adopted, that all proceedings relating to the books '' are based upon the absolute stability of the record from that date.'' All calculations relating to the year 1921 would be imperiled, if not completely upset by the changes in the roll of assessments which would result from the ordinance if its intention was to exempt from the taxes for 1921. Such changes would require a higher rate of taxation. Would it not have occurred to the city's representatives that an intention to authorize exemptions entailing such effects should be clearly expressed?

From these various points of view, as well from that of the existing tax system as from that of the body of authoritative precedent relating to the interpretation of statutes granting exemptions from taxes of this character, it appears that the ordinance was not intended to apply to the taxes for the year 1921.

Motion denied.